■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HAL KAREN, Appellant. [793 NYS2d 273]—

Rose, J. Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered June 19, 2003, upon a verdict convicting defendant of the crimes of murder in the second degree, offering a false instrument for filing in the first degree and perjury in the second degree.

In 2003, following a jury trial, defendant was convicted of murder in the second degree, offering a false instrument for filing in the first degree and perjury in the second degree in connection with the death of his wife in June 1999 and his subsequent efforts to conceal her death. He was sentenced to an aggregate term of 26⅓ years to life in prison and now appeals.

We are unpersuaded by defendant's contention that the evidence was legally insufficient to support the jury's determination that he intentionally caused his wife's death. The evidence at trial established that defendant's wife disappeared on June 27, 1999. At that time, defendant told the authorities and others that his wife had said goodbye to their child, taken some of her belongings, left their home in a stranger's car and was not seen again. Thereafter, defendant filed an action for divorce and sought an order of protection against his wife in Family Court. In March 2002, decomposed human remains were discovered in a trash can at the bottom of a steep, 80-foot embankment in a wooded area within two miles of defendant's home. Investigation of the remains and the container in which they were found led police to believe that the remains were those of defendant's wife and he had murdered her. When confronted with the evidence collected by police, defendant changed his story about his wife's departure and admitted that he had placed her body in the trash can and dumped it over the embankment. He also claimed, however, that he did so after finding her dead of a cocaine overdose in the bathroom of their home. Defendant further explained, both to authorities and at trial, that he had disposed of his wife's body and concealed her death because he

feared that her use of cocaine would result in his loss of custody of his child.

As to defendant's claim that his wife died as a result of a cocaine overdose, the People's forensic expert testified that, while some evidence of cocaine was found in the victim's remains, the amount would have been insufficient to cause the victim's death. After excluding other possible causes of death, the expert also concluded that the victim died as a result of traumatic asphyxia. Additionally, the testimony of an investigating officer established that, given the position of the toilet and sink, it would have been impossible for the victim to have been in the position described by defendant when he allegedly found her body in the bathroom. Other evidence indicated that defendant's wife planned to leave him, and defendant stated to police that his wife had ruined his life and he had been angry with her for stealing cash from his wallet.

Viewing this evidence in the light most favorable to the People, there is a valid line of reasoning supporting the jury's findings of the elements of murder in the second degree (see People v Williams, 84 NY2d 925, 926 [1994]; People v Lopez, 9 AD3d 692, 694 [2004]; People v Battease, 3 AD3d 601, 602 [2004]). Defendant's active concealment of the victim's death and the manner in which he disposed of her body constitute unmistakable evidence of his consciousness of guilt (see People v Bierenbaum, 301 AD2d 119, 138-139 [2002], lv denied 99 NY2d 626 [2003], cert denied 540 US 821 [2003]; People v Lane, 195 AD2d 876, 877-878 [1993], lv denied 82 NY2d 850 [1993]) which, together with the forensic and other evidence, is legally sufficient to establish that he intentionally caused his wife's death. In addition, after weighing this evidence, and giving due deference to the jury's resolution of credibility issues, we are satisfied that the verdict was not contrary to the weight of the evidence (see People v Williams, 11 AD3d 810, 811 [2004], lv denied 4 NY3d 769 [2005]; People v Washington, 4 AD3d 546, 547 [2004]).

Defendant next argues that he was deprived of a fair trial as the result of two incidents of juror misconduct during the jury's deliberations. Defendant made a motion pursuant to CPL 330.30 (2) to set aside the verdict after some jurors reported that juror No. 9 had stated that her mind was made up from "day one" that defendant was guilty and that juror No. 10 had been coerced by another juror into voting for a verdict of guilty. At the hearing on the motion, juror No. 9 testified that, while she may have made the statements attributed to her, she did not recall doing so and, in any event, she had not in fact decided

whether defendant was guilty or innocent until deliberations. As to the second incident, juror No. 10, who was 20 years of age, testified that juror No. 4 had threatened to inform the judge that he had consumed a beer on the previous evening while the jury was sequestered and, because he feared that he would lose his job if his underage drinking were revealed, he changed his vote from not guilty to guilty about 10 minutes later.

"The trial court is invested with discretion and posttrial fact-finding powers to ascertain and determine whether the activity during deliberations constituted misconduct and whether the verdict should be set aside and a new trial ordered" (*People v Maragh*, 94 NY2d 569, 574 [2000], citing *People v Testa*, 61 NY2d 1008, 1009 [1984]). The allegation that juror No. 9 had prejudged defendant's guilt presented an issue of credibility that was properly resolved by County Court (*see e.g. People v Cabrera*, 305 AD2d 263, 263 [2003], *lv denied* 100 NY2d 560 [2003]). The further claim that juror No. 10 was coerced or bullied into a compromise verdict raises no question of outside influence but, rather, seeks to impeach the verdict by delving into the tenor of the jury's deliberative processes (*see People v Brown*, 48 NY2d 388, 393 [1979]; *People v De Lucia*, 20 NY2d 275, 279 [1967]; *People v Anderson*, 249 AD2d 405, 405-406 [1998], *lv denied* 92 NY2d 877 [1998]; *People v Redd*, 164 AD2d 34 [1990]). Significantly, after the verdict was announced, the jury was polled and juror No. 10 confirmed his guilty verdict (*see People v Goode*, 270 AD2d 144, 145 [2000], *lv denied* 95 NY2d 835 [2000]; *People v Smalls*, 112 AD2d 173, 175 [1985]). Under these circumstances, County Court properly exercised its discretion to reject these belated misgivings and second thoughts, and to deny defendant's motion to set aside the verdict.

Defendant's remaining contentions, including his claim that his sentence was harsh and excessive and that County Court erred in amplifying its charge regarding intent in response to a jury question, have been considered and rejected as unavailing.

Cardona, P.J., Crew III, Spain and Mugglin, JJ., concur. Ordered that the judgment is affirmed.